We will hear argument this morning in Case 2107, Cedar Point Nursery v. Hassid. Mr. Thompson? Thank you, Mr. Chief Justice, and may it please the Court. An access easement that takes the right to enter, occupy, and use another's private property affects a per se physical taking under the Fifth Amendment. Any time limitations placed on access go towards the just compensation due, not whether a taking has occurred. The access regulation at issue in this case authorizes an easement on the property of petitioners for the benefit of union organizers. Under the terms of the access regulation, organizers may occupy the business's property for three hours each day, 120 days each year. This Court should hold that the taking of this easement violates the Fifth Amendment because it affects a physical taking without compensation, and the Court should so hold for two reasons. First, the appropriation of a real property interest triggers a categorical duty to compensate. The access regulation authorizes the taking of a real property interest in the form of a continual right to occupy and use petitioners' property. And second, at a more fundamental level, the access regulation denies petitioners the right to exclude union organizers from their property. Such an infringement on the most fundamental property right merits per se treatment. The Ninth Circuit, however, took a different tack. It demoted the right to exclude to just another stick in the bundle and would give per se treatment only to those rare easements that authorized 24-7 occupation. Not even the Board supports that extreme rule. But the Board offers no basis, much less a principled one, on which to distinguish access easements that merit per se treatment from those that don't. If the government wants to take an access easement over private property, it has to violate the taking clause. I welcome the Court's questions. Counsel, on page 6 of the Chamber of Commerce's brief, it says that requiring a sacrifice of the right to exclude third parties during the conduct of reasonable government inspections that benefit property owners will likely satisfy the doctrine of unconstitutional conditions. I wonder if you agree with that. Mr. Chief Justice, we would say that reasonable government inspections are a background principle of property law that do not affect your property right or your right to exclude. I do think the government can exact a constitutional condition on some relinquishment of the right to exclude. But routine government inspections and administrative searches are justified as a government power that they've had at common law. So it has nothing to do with whether it benefits the property owners? Not under our formulation, Mr. Chief Justice. As I read this Court's cases, since the government has the authority at common law to undertake reasonable searches, the property owner does not have the right to exclude the government when it undertakes that power. Certainly the Fourth Amendment presents a constitutional limit on the extent to which the government can search, but it does not affect one's property right when the government undertakes that power. Well, why doesn't benefiting peaceful labor or promoting peaceful labor relations fall under the same category as safety inspections? In other words, it benefits the public interest to have limited access along those lines. Mr. Chief Justice, because there was no right at common law to allow third-party union organizers onto one's property, that is a right that when the government takes it has to pay compensation. Were there a lot of union organizers at common law? Certainly not, Your Honor, and I also don't think this could be justified as a constitutional condition because the right to enter into agriculture, the right to sell strawberry plants, for example, is not a government benefit that the board can hold for ransom in exchange for our fundamental property rights. Counsel, how much compensation do you think is due because of the existence of this law? I don't know that question, Your Honor, that's certainly not before the court. I think that the impingement on the property right here is significant, and if the board would like to pay for that, there are certainly measures that the courts below can undertake to determine the right compensation. Thank you, Counsel. Justice Thomas? Thank you, Mr. Chief Justice. Counsel, the question presented here, your question presented is whether the uncompensated appropriation of an easement involves the uncompensated appropriation of an easement. Was there a finding that this is an easement? No, Justice Thomas, there was no finding that this was an easement. I think that we use the term easement in the same way that this court used the term servitude in Portsmouth Harbor, and this court used the term easement in both Kaiser, Aetna, and Cosby. What that means is it's over and above a mere trespass. The government is intending to take a discrete property interest, and it's that taking of an easement interest that merits per se treatment. Does this have to be an interest or easement that is recognized under state law, or can it be something that rather than under state law is recognized under common law? Mr. Justice Thomas, I don't think that whether this is a recognizable easement under state law, for example, whether it's transferable and alienable matters. What matters is that the right to exclude has been denied in a way that is more than a series of mere trespasses, as this court indicated in Portsmouth Harbor. If the government's intent to fire a single shot was to appropriate that property interest, then compensation is due. But that takes you back to what the Chief Justice asked, how much compensation would be due for this, something that is somehow occupies space between a mere trespass and a temporary easement. Justice Thomas, we don't believe that the compensation here would be minimal. However, the court in Loretto would hold that even a minimal invasion of the right to exclude and even a minimal denial of that right would merit compensation. Of course, the New York Court of Appeals in Loretto found a $1 compensation sufficient, but this court nevertheless held that it was a physical taking that merited per se treatment. Finally, you said to the Chief Justice that reasonable searches were okay. How would you define a reasonable search in your case? What would that look like? Justice Thomas, in our case, the government is not searching. It is authorizing third parties to come on to proselytize. Well, I mean, what would be a visit that would be sufficiently reasonable that it would not violate the Fifth Amendment takings clause? Justice Thomas, any time the government undertakes its power to search, it would not be a taking. It could be an unconstitutional search under this Court's Fourth Amendment jurisprudence. But if it is an unconstitutional search, then by definition it cannot be a taking because the government doesn't have authority to undertake that action. Thank you. Justice Breyer? Well, a lot of what I read in this seemed to suggest that you think that the search here or the state's action here was excessive. Is that right? We do think that this violated our fundamental property rights, Justice Breyer. But will you answer my question? Do you think it's excessive as a regulation? Is it? Justice Breyer, I think the uncompensated taking of a property interest is always excessive. Then, if you think it's always excessive, there are dozens and dozens and dozens of statutes which provide, for example, one brief tells us the Mine Safety and Health Act of 1977 allows the Secretary of Labor to inspect a coal mine at least four times a year. And I guess that they could have, say, some kind of, they might delegate that authority to private inspectors. I don't know. But are all those long lists of statutes, are they all unconstitutional? No, Justice Breyer, because those are not affecting your property right. You do not possess the property right. You can't keep them out. That's a treaty right. I see. It's common law. Okay. Well, you know what they have that's really surprising. I don't mean to sound facetious or sarcastic, but I was trying to think of an example. People now have in 15 years their own private spaceships or their own electric cars or their own driverless cars. And there's a law that says people can go in, the inspectors, the gas station. If you keep your car without using it inside your property for 10 years, they want to go inspect it. They have to do that because it might blow up. They had no spaceships at common law. I'm just trying to think of an example where it's the same idea. It's just they didn't have it at common law. Justice Breyer, what matters is whether the government had the power to search at common law, not what they are searching. So if the government is using its authority to search, which is a power that the government possesses at common law, the property owner does not possess the right to exclude them. So the government can search whatever is reasonable. They can search it, but what it cannot do is take a discrete property interest. Well, I understand the word take, but that sounds like a conclusion. What they cannot do is, I mean, they send someone out there, as here, to talk to workers to find out what the conditions are, for example. Can they do that? They're searching for conditions. They're searching to see whether they'd like to belong to a union. They can't do that. What's the difference? The difference is the power that the government is doing. If it is a power that the government possesses at common law, then you do not have the right to exclude the government from undertaking that power. If it is not a power that the government possesses at common law, then, of course, you do possess the right to exclude. And when the government takes that right from you, something that it could not do at common law, it has to compensate you for taking that right. But they're searching to see if the electric car, which they didn't have in common law, is safe enough to take out on the highway. Can they do it? Of course, Justice Breyer, because they still have the power to search. It's the searching power, not the thing that they're searching, that matters. Justice Alito? Judge Ikuda looked to California property law in determining that, in her judgment, there was a taking here of a property interest. Is that the proper approach? Do we look to how state law in 2021 defines property interests? Justice Alito, every takings question is going to begin by what is the property right that the property owner possesses. But after that analysis is undertaken, this court is certainly charged with determining the extent of the violation of the Fifth Amendment. And here, the fact that this can be fairly characterized as an easement under California law, as Judge Ikuda noted in her unbanked defense, only strengthens our claim that this is the taking of a discrete property interest. But notwithstanding whether it can be fairly characterized as an easement under California law, the impact on the right… Could you answer that question a little bit more simply? Is this a question of whether it's a property interest under California law today, or is it a question whether it would be regarded as a property interest at the time of the adoption of the Fifth Amendment, or is it something else? Is it a generic concept of an easement? Maybe we would look to the restatement of property. This is an important point. What is the answer? Is there a simple answer to that question? Yes, Justice Alito. We are using the term easement in the sense that the court used it in Cosby v. Portsmouth Harbor. It's not looking to whether it squares on all fours with state law. What matters is whether the impingement on the right to exclude is over and above a series of mere trespasses. Well, what is the definition of an easement then? If it's not California law, it's not common law, you acknowledge this is not a classic easement. What is your definition of an easement? We are using easement in the same sense that this court used easement in Cosby v. Portsmouth Harbor, Kaiser, Aetna. We are using the term to say that this is the taking of the right to exclude over and above a series of mere trespasses. Well, the restatement defines an easement as an easement creates a non-possessory right to enter and use land in the possession of another and it goes on. Is that your definition? Any right to enter land is an easement? Justice Alito, that may be the restatement's definition. That is not how we are using the term easement here. Again, we are using the term easement as a shorthand to designate a taking of a property right that is over and above a series of mere trespasses. It's certainly true that the access regulation grants the union the right to come on and use our property for a discrete purpose. And that, as Judge Okuda noted, has the hallmarks of an easement engrossed under California law. One last question if I can squeeze it in. How do you distinguish or do you not distinguish the right of union representatives to enter under the National Labor Relations Act? Justice Alito, I don't think this court needs to address the access authorized under the NLRA simply by virtue of how this court has narrowed that access right to only those situations where workers are inaccessible. And those cases, of course, didn't raise takings questions. They were interpretations of the NLRA. Thank you. Justice Sotomayor? Counsel, that's the problem I'm having. Answer Justice Alito's question. Under your theory, and you're creating sort of a federal common law definition of what an easement is because you're not referring to California law. You're not referring to common law. I guess you want us to make it up somehow. But would Babcock, with the NLRB rule and the limitations that we created in Babcock, make you entitled to compensation? No, I do not think they would, Justice Sotomayor. I think in Lechmere, as narrow as the access right is under the NLRA, does not authorize the taking of anything more than what would be a mere one-time authorized trespass. Well, it's not one-time. It could be much more under the NLRB. It just wouldn't be as much as this. But let me ask you this, Counsel. Aren't you then just conceding that this is not a per se rule? And we have very few per se rules in this area. In Arkansas Game, my late colleague Justice Ginsburg explained that there are nearly infinite ways in which government actions can affect property interests. The court has recognized few invariable rules in this area. So given that, why don't we just take the Arkansas Game theory, or not theory, variables, and apply them to this case? Why don't you win under that? And that's what the dissent said in the panel decision. You're claiming that this is different than the Babcock situation, or similar to the Babcock situation, because people don't live on the premises. They're easily accessible. They speak English more than Spanish. I'm not even sure the language difference makes a difference in our analysis. But don't you win under Babcock? Justice Sotomayor, we might. But the distinction that this court has always made between per se rules and ad hoc adjudications of takings clause is whether the denial of the right to exclude in the form of taking of a— Counsel, that's just simply not true. Because we've had access right cases like Kaiser, Aetna, and Kroon Yards. Even the Arkansas Game, which were invasions of the right to exclude. All of those cases were identical to this one stick in the bundle of rights. And there, we just didn't apply a per se rule. We found in—we suggested that some takings like an Arkansas Game were unconstitutional, but not under a per se analysis. Justice Sotomayor, I don't believe that that formulation of Kaiser, Aetna survives subsequent decisions by this court. This court has always— So what do you do with Kroon Yards? Justice Sotomayor, as this court has recognized, Kroon Yard is a limited rule that is only available to publicly accessible places. And one question, is your rule of applicable—can we exempt your absolutist rule and say it applies to only situations in which government—in which access is provided to someone who's not a government official or government agent or contractor? No, I don't think that would make a difference here, Your Honor. I think what matters is the extent of the physical invasion authorized by law. Then you are putting at risk all of the government regimes that permit for nuclear power plants. There are inspections almost on a daily basis, if not a weekly or monthly basis. Some mines require extensive visits. I don't believe that's correct, Your Honor. I think as my discussion with Justice Breyer indicated, those are limitations on your property right at common law. You do not have the right to deny the government to come on your property to search. That would save all of the administrative and inspection regimes that worry the board. Thank you, counsel. Justice Kagan? Mr. Thompson, if I could go back first to your answers to Justice Thomas. Let's say that I don't think that this would count as an easement under California law for a variety of reasons that Justice Thomas gave and Justice Alito gave. Let's just assume that to be true. You do keep on talking about a discrete interest in property. I guess my question is, what discrete interest are you talking about, if not an easement as defined by California law? Justice Kagan, we're talking about the denial of the right to exclude third parties from our property for 120 days a year. I know what the thing says, but I don't think the denial of a right to exclude counts as a discrete interest in property. I mean, the right to exclude is one of the sticks in the bundle that a property owner has. But usually when people talk about discrete interests in property, it's like a legal form. It's an easement. It's a fee simple. It's something like that. But you're not pointing to anything like that. Am I right? That's correct, Justice Kagan. What we're pointing to is the same language that this court used in Cosby to describe an easement. Sorry. You talk a lot about background principles of property law, and that's the way you say of every inspection regime and every search regime, that somehow that there is a background principle of property law that is incorporated into this analysis, so that these property owners don't really have a property right to exclude inspectors and so forth. But then you put that, you time that as of, I think, this goes to what Justice Alito was talking about, as of the time of the ratification of the Constitution. And I guess I wonder why that should be. Because these questions of what is your property interest seems as though it shouldn't stop at the time of the Constitution. The Takings Clause operates as against whatever it is that property generally means. But why should that freeze at that time? Justice Kagan, I think Your Honor is highlighting some ambiguousness in this court's discussion of what merits a background principle of law. I don't think that that concern is really implicated here, because as the court noted in Palazzolo and in Lucas, the state can't by ipsy-dixit create a new background principle some 40 years ago. So while there may be some ambiguities at the margins of what constitutes a background principle of property law, here there's no doubt that the ability to exclude unwanted third-party interlopers was not a right that existed as a background principle of California law. Okay, and can I get one more short one in, which is, are you denying the notion that I think comes from Loretto, that there really is a difference between permanent deprivations and temporary deprivations? Justice Kagan, I think that insofar as you're talking about a structure on one's property, that structure needs to be permanent to have per se treatment. Insofar as the court is talking about access to one's property by individuals, no one dispelled the notion that the people have to be stationed there 24-7. Thank you. Justice Gorsuch? Counsel, I think I'd like you to have a little more opportunity to respond to the charge that this would be revolutionary and the end of all regulatory regimes, that the government would never be able to walk on anyone's property again to do a search or to conduct tests or ensure the safety of licensed operations there, whether it's a power plant or otherwise. Would you address that concern, please? Yes, I'd be happy to, Justice Gorsuch. As the court is aware, every takings claim begins with, what is the property right that the private property owner possesses? And that looks to background principles of property law to determine what the scope of the property right is. With respect to the government's authority to search, that was certainly present at common law, and the Fourth Amendment put limits on the government's power to search, but it certainly recognizes that that is a power that the government possessed at all times, and certainly at the time of the California founding. So when the government exercises that power to search, as it does with administrative search inspections and other searches, it is not taking away a property right from you because that's nothing that you possessed. As this court said in Hurtado, the government doesn't have to pay for a duty that is already owed. Well, what if California had passed an identical regulation to the one here, except that instead of allowing union organizers access, it allowed union opponents access in order to speak with employees about the downsides of joining a union? So again, not a government worker coming to do a search to ensure compliance with the regulatory regime, but a third party being permitted and given a right to access the property. Or suppose if California had allowed any member of the public to come onto the property to speak with employees for three hours a day, 120 days a year, about health and safety issues, educational opportunities, medical treatment available to them, or just to promote an ideological cause. Would there be a different result? No, there would not, Justice Gorsuch. The property question, the takings question, does not turn on the speech that is being advocated. If it were right-to-work advocates or if it were members of the public that were giving access and giving a discrete property interest to my clients, that would also merit per se treatment under this court's takings clause doctrine. Thank you very much, Counsel. Justice Kavanaugh? Thank you, Mr. Chief Justice, and good morning, Mr. Thompson. I'm a bit mystified by some of the arguments here because it seems like you're asking us to reinvent the wheel, but it's not a new issue, at least as I see it. We decided unanimously in 1956 how to balance property rights against union organizing rights in the Babcock case, and then, of course, in Letchmere we reiterated that in Justice Thomas' opinion for the court there. The Babcock briefs, if you go back into those, those are all about property rights against union organizing rights, and then Babcock considers that and sets forth a rule. Now, I think you probably prevail under that rule, but I'm curious why your argument is not as simple as Justice Clark's, California Supreme Court Justice Clark's, argument in his dissent in the 76 case that you cite where he just says under Babcock there's a rule, the board's regulation here goes beyond the Babcock rule by permitting blanket access under private property during working hours and access when alternative means of communications do in fact exist. The regulation is therefore unconstitutional. Why is it not as simple as that? Because, Justice Kavanaugh, as you're undoubtedly aware, the NLRA cases are interpreting the statute, and they're not being adjudicated under a takings theory. Well, let me stop you right there. I think they're doing constitutional avoidance, and constitutional avoidance not to necessarily avoid a potentially unconstitutional, but an unconstitutionality if the regulation were allowed to go beyond what the court allowed in Babcock. So, in other words, it seems to me, especially if you go back into the briefs in Babcock, which are all about the Fifth Amendment, not all about, but they talk a lot about the Fifth Amendment, that then you read Babcock, it is interpreting the statute as informed by the Constitution and saying given the constitutional status of the property rights, we're only going to allow this very limited intrusion. Again, as Justice Clark says for the California Supreme Court, when alternative means of communication do in fact exist, then you can't go under the property. Your response to that? I agree with you, Justice Kavanaugh, that what the court is doing in Lechmere and Babcock is undertaking a constitutional avoidance inquiry. I think that we were unable or precluded from interpreting the access regulation or the ALRA in a similar manner because of the Pendle and Sons decision from 1976. Exactly, but now that it's here, isn't that the simple, easy response to this case, which is we've already considered 65 years ago the balance of property rights against labor organizing. We set forth a very clear rule, and it was reiterated in Lechmere by Justice Thomas' majority opinion, and there's no reason to depart from that rule that we've seen. It provides expansive protection for property rights, but not without the exception as articulated in Babcock, end of case. Justice Kavanaugh, because the access regulation that is in effect in California right now affects the physical taking, and it is that claim that is before this court, the claim that we alleged. If California on remand wants to promulgate a new rule that doesn't take access for 120 days a year with inaccessibility not being a consideration, then perhaps it can craft a rule that would survive a takings inquiry, but it has not done so, and the one before this court clearly violates the taking. Just to be clear, I'm saying you would prevail under Babcock. You don't want to prevail under Babcock, though. I agree that we would prevail under Babcock, but I don't think that question is fairly presented by this case. Justice Barrett? Mr. Thompson, so I think that both sides, you and the respondents, have line-drawing problems, so let me address your line-drawing problems. I think a lot of the questions, starting with Justice Thomas' questions about easements, and Justice Kavanaugh talking about Babcock and Lechmere, go to the question of when does something arise, when does something become a physical taking such that the per se rule is triggered? So let me ask you this. What if California had a regulation that permitted union organizers to go onto the property of your client one hour a day, one day a year? Is that a taking subject to the per se rule? Yes, it is, Justice Barrett, and the court already held so in Portsmouth Harbor, at least indicated strongly when it said that if the guns were to fire a single shot with the admitted intent of taking that property right, that the taking would be complete. If the government enacts a regulation that takes the property right for one hour a year with the admitted intent of occupying and appropriating that property, the compensation may be minimal, but it's still a taking. Okay, so let me make sure that I understand the relevance then of the focus on the amount of time and the degree of intrusion. It's really not about whether property has been taken. It's about whether that's reflective of a government's intent to occupy or take, which is why that language in Portsmouth Harbor talks about if the intent behind a single shot was to assert control over the property, then the taking would be complete and that there's no question about the intent here because it was accomplished by regulation. Is that correct? That's exactly correct. Okay, then I don't understand how under that theory, Section 7 of the NLRA isn't accomplishing a taking. Justice Barrett, I think it's possible that the NLRA access could be justified as a constitutional condition in that it is limited to the very remote scenario where workers are otherwise inaccessible and the government can condition that ability to employ workers completely removed from society from a very, very limited access right, and then only when the board weighs the property interest that would be at stake in a particular circumstance. Okay, well let me ask you, I mean, I think the problems here are line drawing and then the other problems are, as others of my colleagues have been suggesting, the licensing regimes. And the Service Employees International Union has an amicus brief in which they say, well listen, some of these justifications or some of these inspection regimes might be justified and the Chamber of Commerce makes this point as constitutional conditions on participation in the agriculture employment market. Just as, say, for FDA licensing regimes that inspections can be justified as legitimate exercises of conditions on the government's permitting a company to enter the pharmaceutical market. Why doesn't that rationale apply to your entry into the agricultural market? Because, Justice Barrett, as this court said in Horn, the right to enter agriculture is not something that the government can hold hostage, it's not something that can be conditioned. Why is the pharmaceutical industry different? Is this an industry by industry calculus? Well, to use the Chief Justice's words in Horn, we're not talking about toxic chemicals, we're talking about a healthy snack. There is quite an unambiguous line between those substances that can cause public harm and entering into agriculture. Thank you, Counsel. A minute to wrap up? Thank you, Mr. Chief Justice. As many of the court's questions today indicate, this case does ultimately come down to line drawing. The Ninth Circuit would draw that line at 24-7, 365-day occupations. The board rejects that line in explaining that a daylight easement would be a per se physical taking, but offers no alternative. Petitioner's proposal squares with the Federal Circuit and is at least hinted at, if not explicitly endorsed by this court's decision in Portsmouth Harbor. The court ought to explicitly endorse that line today. It gives due respect to the fundamental right to exclude that is at the heart of the Fifth Amendment. If the access easement taken by the board is so valuable to it, it can simply pay the businesses the value of that easement. The decision of the Ninth Circuit should be reversed. Thank you, Counsel. General Mongan. Mr. Chief Justice, and may it please the court, the board's regulation authorizes only a limited number of organizers to enter petitioner's farms for the sole purpose of speaking with employees at non-work times during certain periods of the year for no more than three hours a day and subject to detailed restrictions. The only question before the court is whether that regulation is a per se taking, and the answer is no. In this area of the law, the court has reserved per se treatment for extreme regulations that are the functional equivalent of the government directly appropriating private property. There's just two narrow categories of per se regulatory takings, the Lucas category for regulations that eliminate all economically beneficial uses and the Loretto category for regulations authorizing a permanent and continuous physical invasion, which this court said effectively destroys the owner's rights in their property. Other regulations may also affect takings, but they're subject to the standard ad hoc inquiry examining the nature of the regulation and the particular burdens it imposes. That's why Lucas emphasized that a regulation eliminating 95% of beneficial uses would not be a per se taking, even though there'd be a strong ad hoc claim. And it's why Loretto said that regulations authorizing intermittent physical intrusions are also subject to ad hoc treatment, even though the duration and severity of the intrusion is a critical factor that may predominate in that analysis. Petitioners can't credibly claim that the board's regulation destroys all their rights to any part of their property or that it's the functional equivalent of the government taking over their farms. Farmers are free to challenge this regulation under the takings clause, but judicial review should proceed by focusing on the nature of this access regulation and the particular burdens it imposes, not by the blunt instrument of a per se rule. Mr. Chief Justice, I welcome the court's question. Thank you, Counsel. You began by saying this authorizes a limited number of organizers to enter the property. What is that number? It's typically two organizers for each work crew. If there are greater than 30 workers, there can be one additional organizer for each 15 additional workers. What do you do if there's more than one union that wants access? I mean, it's not at all unusual for unions to be competing for representation. So does each union get its own 120 days? Yes, Your Honor, I think that's right. It's a theoretical matter. It's a practical matter in our experience. There are not typically situations where there are multiple unions coming on in a particular year, but that is theoretically possible. And again, there's no limit on that. Whether it's theoretical or not, this could end up being an authorization to enter every day of the year, which you would acknowledge is a taking. Well, Your Honor, it would be in that hypothetical scenario potentially, but you're only allowed to come on when people are working there during non-work time. So I don't know if it's actually going to amount to year-round. And in practice, as we've noted in the briefing, it's exceptionally rare to have even more than one 30-day access notice. We've never had anything close to year-round on Your Honor's hypothetical. You acknowledge, as I understand it, that if the access was every day during daylight hours, that that would be a taking? No, Your Honor, I don't think that's quite our position. We think that typically this has to be assessed through the ad hoc inquiry. What Loretto and Nolan said is that if, you know, it has to be permitted. Well, if it were, is there a situation where you think the ad hoc inquiry would say that every day daylight hours does not violate the takings clause? No, I think that would be a very strong claim under Penn Central, Your Honor, because of the degree of the physical intrusion and the, you know, potentially much greater interference with investment backed expectations. And that's why you want to have an ad hoc inquiry here, so you can take account of the features of a hypothetical like that that make it look more like a taking. Their rule, of course, would apply regardless, even to one hour a year on Justice Barrett's hypothetical, and that would ignore the critical features that go into the Fifth Amendment analysis. Under your analysis, is the property interest defined by state law or common law? Well, there's a simple property interest here, but in determining whether it is a taking, you're going to look to the severity of the burden. And we don't think that there is any basis for treating this as an easement under state or federal common law. Thank you, Counsel. Justice Thomas. Thank you, Mr. Chief Justice. Mr. Mungin, I'm quite interested in how related the inspection or the opportunity to be on private property has to do with the how related does it have to be to the business operation? For example, could you have the exact same requirement, except during non-business hours, for the property to be available for training of the National Guard, for example, or the state police? Since it's open property, you just simply say for three hours a day, not more than 120 days a year, but certainly not to interfere with the business the state police could train there. Your Honor, I think that would be a stronger claim under the ad hoc inquiry. It's a pretty substantial interference with anybody's investment-backed expectations. You don't expect your property to be a training ground for the state police, and it's going to be a substantially severe physical intrusion. And Penn Central itself says that a critical focus of the inquiry is whether there is a physical intrusion authorized by the regulation. I understand your point, but I'm really interested in how this is different from the unions' presence while workers are there. If the condition is that only two or three police officers can train during non-business hours and only in unoccupied portions of the property, if that is closer to the line than the union coming onto property while workers are there and possibly even interfering with workers, how is the intrusion of the police officers different from that of the union organizers? Well, I guess I'd want to know more about what the police officers are allowed to do on the property, but we do know under this regulation, Your Honor, that the union organizers are not allowed to interfere with the property or agricultural operations. They can only talk to the workers during non-work periods, only two organizers in the typical case. They're not, you know, firing guns or doing the types of things that you might expect the state… Well, let's say the state police are just there to use it for calisthenics and working out, and they're not firing guns, they're not meeting with the employees, and they are to remain as inconspicuous as possible. So why is that closer to the line than the union organizers? Well, I think it does have to do with the fact that this is a situation related to a business activity that's being conducted on the land, and your hypothetical would be sort of without regard to the activities on the land, but it would be assessed in an ad hoc inquiry because neither of those are continuous intrusions, Your Honor. Thank you. Justice Breyer? I think the petitioners are saying that whether this regulation is excessive or not is beside the point. That's a question of whether there's a regulatory taking and whether it went too far. This is the kind of taking that is no matter what requires compensation under the Fifth Amendment. It is a Fifth Amendment taking because it's a classical property interest. We have previously defined or sort of said that that kind of interest has to be a taking that is continuous and indefinite, like taking even an inch if somebody's apartment has to put up a CATV system or taking an easement for the beach. The virtue of their approach is that it's pretty clear, I think, because otherwise you get into the mess of saying, well, what about a year? Here it's 4% of all the year's hours and 10% or 12% of all the daylight hours, but it is not government coming in. It's a private person coming in. That's what they say. So what are the rules that distinguish an easement from not? I thought an easement, for example, ran with the land so that if it's no longer agricultural land, but rather is a steel mill, you can't transfer the easement. It doesn't exist anymore. Nobody can go on the property. There may be other characteristics. What are they, in your opinion, that distinguishes this case from a classical easement? Well, Your Honor, I think that this is not a classical easement. As you noted, it is not pertinent to any particular parcel of land. It is a regulatory scheme that applies to a particular type of business conducted on the land, and the access is not to a particular pathway or parcel. It's to the employees where they are. And the regulation makes clear if they're congregated on the bus, off the property, before or after work, the access is to the bus, not to the farm. It's also not something that could be assigned or conveyed. It wouldn't be recorded. So it doesn't have the hallmarks of an easement. And, Your Honor, I don't think that they have articulated a simple per se rule here. And they've offered about five or six different formulations of their upfront test. Originally, they suggested very strongly in the opening brief you'd be looking at state law. Now they've disavowed that, and you say it's a federal common law inquiry. But they haven't been able to offer a clear definition of how a court would discern whether it is a, quote, access easement or a permissible series of trespasses. And if you get past that, then courts are going to have to be applying a multitude of very complex exceptions in the mine run case, rather than looking at the considerations that have always been the focus of the Fifth Amendment inquiry, the severity of the burden and the character of the particular government action. Thank you. Thank you. Justice Alito? As Justice Barrett said, both you and Mr. Thompson have line-drawing challenges here. So let's start out with a town taking an easement so that people in the town can walk over somebody's beachfront property to get to a public beach. You would concede that that is a per se taking, right? Your Honor, I'd want to know a little bit more to know how to analyze it. But, yes, I think that under any standard, a sort of formal or pertinent easement over the property would be a taking. And what this court has said in Nolan is if it's continuous, it's per se. Under this court's precedent, if it was a very limited period of time, I guess you'd analyze it under Penn Central. Well, that seems like a pretty simple question. What more would you need to know? The town says we're going to take an easement over your property so that people can walk across your property to get from point A to point B. I think that's right, Your Honor. Under your precedent, I think it has to be continuous for it to be per se. But it's hard for me to conceive of a situation where a public access easement pertinent to a particular parcel is not going to be a taking under the ad hoc standard. Suppose it doesn't apply 365 days a year. Suppose it's 364 days a year. Suppose it's 264 days a year. Suppose it's only on Memorial Day, Fourth of July, and Labor Day weekends. Different answer? I think those are going to be slam dunk taking claims under Penn Central, Your Honor, because they're substantially interfering with your investment expectations and you're singling out one landowner for this type of particular claim. Why do you need to get to Penn Central? Did we start out with Penn Central if it was an easement for everybody 365 days of the year? Is that a Penn Central question? Do you think everything is a Penn Central question? Well, Your Honor, I think under this Court's framework, it's outside of the per se rule because it's not destroying all the rights in the property. But let me say this. I think if the Court focused on that formal easement scenario and wants to reserve the possibility of a per se rule for that type of situation where it's pertinent to a property, that doesn't give us much heartburn because I think that that's going to be something we'd pay for in any event. What would be deeply problematic is if the Court adopted a rule of per se treatment for any sort of authorized intrusion, including a limited intrusion as a part of a regular claim. Well, I mean, if you're not willing to concede that a permanent easement across somebody's property to get from point A to point B is a per se taking, then I don't know where your argument is going. And if you're not taking that position, then I really don't understand exactly where you're drawing the line. That's what I'm trying to get at. Yes, Your Honor, I think that those would be takings under any standard, but we should not adopt a broad per se rule that applies to the different type of regulatory regime that we have here and many types of access regulations that look nothing like an easement. All right, thank you. Justice Sotomayor? Counsel, I'm following up on Justice Alito's question in part. I think you're saying that a per se rule should apply only to permanent and continuous physical invasions of a property right that's defined by state law, correct? So if there was a permanent easement, you suggest it might be then a taking, a formal easement under California law? I think that's right, Your Honor, if I understand the question. All right, so let me take you a step further. If it's not, why should we be applying the Penn Central test? That test really doesn't, fails to capture the significant interest in the right to exclude at stake in physical invasion cases. One of my colleagues was skeptical that there'd be much money involved in a situation like this one because I suspect that there's very little economic damage that's being done to a property in which there's intermittent inspections. And there's nothing that runs with the land or the business. I mean, if somebody buys the land and changes the business, then this access regulation has no applicability. That suggests to me that it has to be a different test. It can't be Penn Central. So why can't it be Arkansas Game? Your Honor, I think that an ad hoc approach, and we think that it's the inquiry. Counsel, let me stop you there. Ad hoc won't satisfy many people. Well, we need we need something that gives clear guidance. So give me a clear, a clear method of addressing this case. So something like Justice Thomas's hypothetical doesn't become permissible for the government to do. Seems to me that letting the government come and use your land for non-business purposes or non-business related purposes seems to be exactly what the takings clause was intended to avoid. So articulate the rule to me. I think the court has given clear guidance and Penn Central itself. Well, I don't I think the clear guidance is in Babcock and and and its progeny. So I don't think it's Penn Central. I think it's those cases. Well, if I could just say briefly, Your Honor, the court has made very clear that if there is a substantial physical intrusion, that factor can predominate. And in Kaiser Edna, it applies Penn Central to a regular an action that involves substantial physical intrusion and found a taking on that basis primarily without looking closely at diminution in value. And I think if there's concern about how lower courts apply that ad hoc framework to access regulations, the answer would be to grant review in a case that actually presents a Penn Central challenge to an access regulation, not to adopt a very broad per se rule that would swallow up a lot of other types of access regulations. Justice Kagan. General Mungin, I have to admit I'm a little bit struggling to understand your argument. So can can can I just ask you to clarify this? As I understood what you said to Justice Alito, you said maybe a 365-24 taking of an easement, something that did in fact qualify as an easement, maybe that would be a per se taking. You sort of said maybe to that. But if this were if it was not a formal easement, you know, if there was not a discrete property interest, that the 365-24 possession of property would not qualify as a per se taking, but instead would be resolved under Penn Central. Is that correct? No, Your Honor. And let me clarify. We think Loretto and Nolan made clear that if you have a permanent and continuous access right, whether it's a requirement under an easement or just a regulatory access right, that would be per se. Okay. Then you do get into the line drawing problem. I mean, I guess I thought that you were getting rid of your line drawing problem by just getting rid of Loretto. But if you do acknowledge that, that a 365-24 ability to intrude on property is a per se taking under Loretto and Nolan, then, you know, just ratcheting back from that, when does it stop being a per se taking? Well, what Loretto and Nolan said is that you require, you know, permanent and continuous access because then it effectively destroys the owner's rights with respect to that part of the property. And so what we would acknowledge is that if you have something that, you know, No, I mean, you know, if it's 365 days, this is really a concrete question, General. If it's 365 days, how about 360 days? I think a court could conclude that that effectively destroys the rights in the same way as the year-round access. So where do you stop? Where does it stop? If it's 365-24, where's your line? Now it's 200 days. I think it's the line that the court suggested in Loretto, you know, is there a continued ability to use, possess, and dispose of this property? And, Your Honor, what I would suggest is that I think any line drawing problems with that position, which I think follows from your precedent, are going to not recur frequently because we don't have access regulations that are anywhere close to continuous. And they're not going to create a lot of practical problems because it's either going to be per se or a slam dunk case under Penn Central. The bigger line drawing problems are associated with my friend's rule where it's not even clear how the threshold test that would apply in every challenge to an access regulation would be applied. I mean, he has his problems, but I'm really trying to figure out the answer to your problems. I guess I just don't see, even if you don't want to give me, I can understand you're not willing to give me, oh, it's this number, but what's the principle that would enable you to set a line someplace short of 365 days? I think that the principle here is that per se treatment is reserved for extreme cases that really are the functional equivalent of the government coming on and directly appropriating your property. And you might say that about an access easement that applies 360 days out of the year, but you wouldn't say it about a tailored regulatory access regime where it's only a few hours a day for short periods during the year. Thank you, General. Justice Gorsuch. Counselor, I'd like to pick up on that. In your brief, you did, I believe, concede that an easement identical to the one in Nolan but limited to daylight hours may qualify as a taking without regard to other factors. So I think that at least was your point there. And if that's the case, then let's just take a few things and move away from it a little bit. What if the state limited access to the easement to residents of a particular neighborhood? Would that take it out of a per se taking? No, Your Honor. If I'm understanding the hypothetical and you're talking about continuous access but only to residents of a certain neighborhood, I think that that would still be per se under Loretto and Nolan. Okay. And then what if the state prohibited any of those residents from transferring their interests, that it was a personal right? Would that cease to be a per se taking? Your Honor, I think that if we're contemplating some sort of continuous ability for third parties to come onto the property whenever they want, that would be a per se taking because it would effectively destroy the owner's rights with respect to that strip of property. Of course, we're very… And what if the state had issued a regulation announcing that access right rather than formally recording it? Would that make a difference? If it's continuous, I think if it's done by regulation, that would be a per se taking. I think the question is if it is an intermittent regulation that only applies for minimum periods of the year and there's substantial protection to minimize the burden, that's not a per se. Still a per se. And then finally, what if the state had promised to remove the easement in the event that the residential property owner agreed to have it developed into a commercial one? Your Honor, I guess I'm not sure exactly how that would be analyzed. I think that it would still be continuous in nature and potentially permanent. I think that's going to be a taking without, you know, reserving the possible Nolan Dolan exception. It's likely to be a taking under either Penn Central or per se. I guess it might not be permanent depending on how you structure the hypothetical. So all of these are per se takings on your view. And as I understand it, the key difference is how many days are at issue. But daylight only hours is enough, so half of the year is enough, I assume then? Your Honor, the reason that we've acknowledged that possibility with respect to daylight hours is that the focus is really on whether there's some continued ability to use and possess and dispose of the property or whether those rights are effectively destroyed. And if the government says the only time you can exclude somebody from the beach is in the middle of the night, we think a court could reasonably conclude that still effectively destroys your rights and apply a per se rule. Thank you, counsel. Justice Kavanaugh? Thank you, Chief Justice, and good morning, General Mongin. The questions here have obviously been a lot about line drawing, and I wanted to ask you, again, the flip side of what I was asking your friend on the other side. It seems to me our precedent in the labor organizing context has drawn the lines and has established a very narrow and very simple resolution for this case, and I want you to tell me why it's wrong or why you disagree with it. Babcock was obviously a statutory case but informed by the Constitution explicitly, as I read it, and the question was how much access will we allow to property under the statute, the NLRA, given the constitutional backdrop of property rights and the decision that seems to reflect the court's understanding of the Constitution and how much protection there is for property rights at page 112 of the decision, and basically says no access unless you can show that there are no alternative means of communication that exist to simplify what it says there. Doesn't Babcock reflect a constitutional line drawing that controls this case? Well, Your Honor, I agree that although it was a statutory case, the court was recognizing the need to balance between property rights and the rights of employees to get this information. I think the board expressly recognized that same need in its regulation, and it took a somewhat different approach in the context of a different statute with a different timeline for elections and a unique sector of California's economy. But isn't that the problem right there? It took a different approach that intruded upon the property rights more than the Supreme Court, this court, had allowed in Babcock, and isn't that, Justice Clark, in the California Supreme Court decision, pointed that out as the exact problem with the California regulation? It just went too far because it went beyond the NLRA. Your Honor, I guess I don't see how that would be a basis for a per se rule. Put aside the nomenclature. The rule is you can't get access to the property when there are alternative means of communication. That's the Babcock rule about how to accommodate the takings clause and the labor organizing rights. Your Honor, I think that that can be a consideration that absolutely could factor into an inquiry that looks at the relevant circumstances of this regulation as it applies to landowners, but it wouldn't seem to provide a basis for a drop in a broad per se rule that would apply across the board, and certainly not one that applies to access regulations that have nothing to do with this type of communication. You mean outside the labor context? Right, Your Honor. I mean they're pushing for a broad per se rule. Exactly, and that's why I was pushing on them that I don't understand why they're not relying on Babcock in the labor organizing context. They seem to want a much broader rule, but the flip side of that is Babcock's a problem for you because if we just followed that and said that reflected the balance of the constitutional rights, the constitutional right here, you would lose under Babcock, I think. I'll end there, and you can move on to Justice Barrett. Thank you. Thank you. Justice Barrett? General Mungin, so obviously this would not be an approach that would apply strictly to commercial property as the hypothetical is based on Nolan suggests. So let me give you a hypothetical based on my personal residence. Let's imagine that it's situated on the corner of two busy streets, and a city decides that it would be beneficial to allow people to protest on my lawn because it's so highly visitable to the traffic that's passing by. But exactly like this one, you know, it says it can do it 120 days a year and three hours at a time just during rush hour. I take it under your theory that's not a per se taking that would be subject to Penn Central. Yes, that would be a powerful Penn Central case. Okay, but why would it be a powerful Penn Central? I mean, in the reply brief, your friends on the other side point out that the Ninth Circuit and the Federal Circuit couldn't identify any Penn Central cases in which a court has found a taking where the diminution in value is less than 50%. And surely my property value hasn't decreased more than 50% as a result of the regulation I just described. I don't think that that would be the right way to approach that type of ad hoc inquiry. But where are you getting that? Where are you getting that? From Penn Central itself, Your Honor, which says that if there is a regulation authorizing a physical intrusion, courts should be more likely to find a taking. Kaiser Aetna applied that and found a taking based on the severity and duration of the physical intrusion. And if there's a concern that courts are not properly applying Penn Central to this type of situation, then the solution would be to take that type of case, as I mentioned, and clarify how it should apply. But General Mayen, Penn Central is deliberately designed to be very permissive towards regulations given the pervasiveness of regulations on property use in modern life. And so it's stacked in favor of regulations. But yet, you know, you're saying that in this particular context, and I'm not sure I read Kaiser Aetna the same way that you do, but you're saying that physical occupations are different. So if physical occupations are different, why isn't the easier way to handle them, the rule that we announced in Loretto, which is to say they're subject to a per se rule? Because, Your Honor, there are going to be some easy Penn Central cases, perhaps like the hypothetical that you just offered, but then in the middle of the spectrum there are some very difficult cases involving much more modest physical intrusions, as to which you really need to know something about the severity of the burden and the character and nature of the government action in the particular case. Let me just interrupt you there so I don't lose all of my time. What is the big deal here? If the severity goes to compensation, as the petitioners claim, why would it be that big of a deal for California to say to the unions, listen, to compensate for the taking, if you want access, you pay 50 bucks? And let's say that the court says that that's a fair amount for the compensation. What's wrong with that? It would be a big deal because then you'd be skipping past the considerations as to the severity of the burden and the nature of the action that inform the Fifth Amendment analysis, and that wouldn't be as straightforward as my friend suggests because you'd have to apply a multitude of complex exceptions before you get to determining whether compensation would be required. Thank you, counsel. A minute to wrap up. General Mungin? Thank you. The rule we're defending today carries out the purpose of the Fifth Amendment by considering the burdens imposed by an intermittent access regulation and the character of that regulation before finding the taking. The rule proposed by petitioners would require you to overrule your precedent and find per se takings without regard to those important factors. Now, they say it would simplify the doctrine, but actually it would make things far more complicated and uncertain, first by adopting a murky threshold test that tries to distinguish between a series of authorized trespasses and a compensable but totally undefined access easement, and then by requiring courts to apply a multitude of complex exceptions to all the access regulations that fall within the scope of that rule. And the sheer volume of words petitioners and their amici devote to proposing all those exceptions to mitigate the harmful impacts of their rule is strong evidence that the rule is not a sensible one. Thank you. Thank you, counsel. Rebuttal, Mr. Thompson? Thank you, Mr. Chief Justice. Just three quick points. There's been a number of discussions about the easement characterization in this case. We characterize the easement here as the court did in Portsmouth Harbor, called it a servitude and Cosby an easement and Kaiser Etna an easement. None of those cases involved a transferable or alienable property-like interest. Nevertheless, in all three of those cases, the court treated the takings inquiry as requiring per se treatment, and the Federal Circuit has done the same thing in Hendler and Otay Mesa. It's also worth noting that up until this court, the board has never disputed the characterization of an easement. It simply said that an easement that authorized intermittent access would not be a per se taking. But what merits per se treatment is the taking of a discrete property interest. I want to quickly echo Justice Barrett's concerns about Penn Central and my friend's optimism that Penn Central would provide adequate relief here if it were simply unfounded. As she noted, no court, at least the Ninth Circuit and Federal Circuit, have been able to find a Penn Central case where value was diminished less than 50%. Lastly, on the question of the days, the line drawing, we are asking the court to draw the line that it has always drawn, the line between use restrictions and physical invasions and occupations. That's the line that this court has always drawn, and where the occupation or where the invasion of minimal compensation may be due, as in Loretto. But that's an easy line to draw. Petitioners, on the other hand, as this court's questioning has made clear, are unable to draw a principled line. For these reasons, the decision of the Ninth Circuit should be reversed. Thank you. Thank you, counsel. The case is submitted.